**FEDERAL ELECTION COMMISSION,**
Applicant,

v.

**AUTOMATED BUSINESS SERVICES,** Cakim Management, Inc., Castillo International, Inc., Castillo Communications, Castillo Cultural Center, Inc., Ilene Advertising, Inc., International Peoples' Law Institution, Newman and Braun, Fred Newman Productions, Inc., New Alliance Party, Rainbow Lobby, Inc., National Alliance, Inc., Respondents.

No. M8–85.

United States District Court,
S.D. New York.

May 31, 1995.

Stephen Hershkowitz, Washington, DC, for petitioner.

Harry Kresky, New York City, for respondents.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

Petitioner, the Federal Election Commission ("the F.E.C."), has served, pursuant to 2 U.S.C. § 437d(a)(3), administrative subpoenas *duces tecum* on respondents, twelve vendors of goods or services to the Lenora B. Fulani for President Committee ("the Fulani Committee"). Currently before the Court is the F.E.C.'s motion for an order enforcing these subpoenas. This matter came before this Court sitting in Part I and was argued at a hearing on April 18, 1995. For the reasons discussed below, the motion is granted.

## BACKGROUND

The F.E.C. is an independent agency of the federal government responsible for the administration and civil enforcement of the Federal Election Campaign Act of 1971, 2 U.S.C. § 431 *et seq.*, and the Presidential Primary Matching Payment Account Act ("the Matching Payment Act"), 26 U.S.C. § 9031 *et seq.* The Matching Payment Act provides for partial federal financing of the campaign of any presidential primary candidate who meets certain eligibility requirements. Once a candidate's eligibility is established, he is entitled to receive payments from the Presidential Primary Matching Payment Account to match individual contributions of up to $250, subject to an overall

ceiling of 50% of the statutory expenditure limitation. A candidate may use the public funds he receives only to defray qualified campaign expenses, as set forth by statute.

Pursuant to its authority, the F.E.C. conducts investigations relating to its duty to examine and audit presidential campaigns that receive public funds under the Matching Payment Act. As part of its investigatory power, the F.E.C. is authorized to require the production of documentary evidence relating to its investigations, and the F.E.C. is authorized to initiate civil actions in order to obtain judicial enforcement of its subpoenas. If the F.E.C. finds that any amount of federal matching funds paid to a candidate was used for any purpose other than qualified campaign expenses, the candidate must repay that amount to the United States Treasury. In addition, if the F.E.C. finds that the candidate received matching funds in excess of his actual entitlement under the statute, the candidate must repay that amount to the Treasury.

Lenora Fulani was a candidate for the 1992 presidential nomination of the Democratic Party, the New Alliance Party, and several other parties. The Lenora B. Fulani for President Committee registered with the F.E.C. as Ms. Fulani's authorized campaign committee, and received a total of $2,013,-323.42 in public funds to use for qualified campaign expenses. The F.E.C. is currently investigating whether the Fulani Committee spent federal matching funds on non-qualified campaign expenses, received funds for non-qualified campaign expenses, and received funds in excess of its entitlement. Pursuant to this investigation, the F.E.C.

served respondents with the administrative subpoenas *duces tecum* that are the subject of the instant motion.[1] The purpose of these subpoenas is to examine books and records from respondent vendors in order to determine whether these books and records are consistent with the Fulani Committee's books and records.

## DISCUSSION

■ A court will enforce an administrative subpoena served by a government agency if the agency satisfies four requirements: (1) the agency subpoena must be for an investigation pursuant to a legitimate purpose; (2) the specific inquiries must be relevant to that purpose; (3) the information sought must not already be within the agency's possession; and (4) the administrative procedures must have been followed. *See In re McVane*, 44 F.3d 1127, 1135 (2d Cir.1995). Respondents object to the subpoenas served on them for three reasons.[2]

■ First, respondents argue that the instant subpoenas implicate their First Amendment associational rights, and that this Court must, therefore, employ a heightened standard of scrutiny in reviewing the subpoenas. Respondents argue that the subpoenas should not be enforced because the subpoenas do not meet the heightened scrutiny mandated by the First Amendment. In *Federal Election Commission v. Larouche Campaign*, 817 F.2d 233, 234 (2d Cir.1987) (*per curiam*), the Second Circuit held that when an administrative subpoena implicates First Amendment associational concerns, the administrative agency "is not automatically entitled to obtain all material that may in some

1. This Court previously rejected an order to show cause brought by respondents that sought an order staying the Amalgamated Bank of New York from complying with three administrative subpoenas *duces tecum* that were served on that Bank by the F.E.C. as part of the same investigation. *See FEC v. Automated Business, Inc.*, M8–85, April 19, 1995 Memorandum Endorsement, at 3–4 (S.D.N.Y.1995)

2. Respondents argue, in addition, that these proceedings should be dismissed because respondents allegedly were never served with signed copies of the orders to show cause. Petitioner observes correctly, however, that respondents waived any objection based on lack of personal

jurisdiction when they appeared before this Court on April 18, 1995, and failed to object at that time. *See Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir.1972) ("If a party enters a case, makes no objection to jurisdiction, and asks the court to act on its behalf in some substantive way, it will be held to have waived further objection."); *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir.1986). Moreover, respondents concede that they were served with unsigned copies of the orders to show cause, and they subsequently were provided with copies of the signed orders. Thus, respondents were not prejudiced by the F.E.C.'s initial failure to serve them with signed copies of the orders.

way be relevant to a proper investigation. Rather, where the disclosure sought will compromise the privacy of individual political associations, and hence risks a chilling of unencumbered associational choices, the agency must make some showing of need for the material sought beyond its mere relevance to a proper investigation."

■ Respondents have failed, however, to establish that they have any First Amendment associational rights that are implicated by the instant subpoenas. As this Court observed previously in denying respondents' motion to quash subpoenas served on a bank used by the Fulani Committee:

Although members of a political association and contributors to a political association have First Amendment associational rights, see *Buckley v. Valeo,* 424 U.S. 1, 66 [96 S.Ct. 612, 657, 46 L.Ed.2d 659] (1976), that may be implicated when an administrative agency serves that political association with a subpoena, the Vendors have failed to cite to any law in support of the proposition that a party that vends goods or services to a political association is entitled to similar First Amendment protection. The mere vending of goods or services to a political association neither evinces support for that association, nor makes the vendor a member of that association. Thus, the First Amendment clearly affords no such protection to vendors of goods or services to political associations.

*FEC v. Automated Business, Inc.,* M8–85, April 19, 1995 Memorandum Endorsement, at 3–4 (S.D.N.Y.1995).

■ Respondents argue, however, that they are entitled to First Amendment protection not normally available to vendors because they, and the persons who own or operate them, are long-time political associates of Lenora Fulani. This argument is entirely without merit. The notion that by doing business with vendors that are owned or operated by its political supporters, a campaign committee can shield those vendors from investigation by the F.E.C. is a baseless

attempt to hamper the proper functioning of the F.E.C. As petitioner correctly points out, if respondents' argument were valid, "then ultimately all campaigns could make themselves immune from federal election laws, by only doing business with their political supporters." (Petitioner Federal Election Commission's Reply in Support of Its Petition for Enforcement of Twelve Commission's Subpoenas and Orders at 5.)

■ The administrative subpoenas served on respondents seek information regarding corporate and business transactions, not information regarding any political association the owners or operators of respondent vendors may have had with Lenora Fulani. Thus, the instant subpoenas do not seek information regarding the political affiliations or activities of the vendors or their respective owners and operators. As such, respondents have clearly failed to demonstrate that they are entitled to First Amendment protection.

■ Respondents' second argument is that the F.E.C.'s subpoenas were issued in bad faith, allegedly as part of the F.E.C.'s overall effort to disrupt and intrude upon the Fulani Committee's political activities. Clearly, respondents have failed to overcome the strong presumption of honesty and integrity to which the F.E.C. is entitled. In any event, respondents lack standing to bring such an objection since it is the Fulani Committee's rights, not the rights of respondent vendors, that are allegedly being violated by the instant administrative subpoenas.[3] As noted above, respondents have no associational rights that are implicated by the instant subpoenas, and respondents lack standing to object to the subpoenas on the ground that the subpoenas violate the rights of the Fulani Committee. Thus, respondents's second argument is without merit.

■ Third, respondents argue that the instant administrative subpoenas are overly broad and seek information that is irrelevant to the F.E.C.'s investigation. The Second

---

**3.** Even if this Court were to interpret respondents' brief as asserting that the rights of the owners and operators of respondent vendors are being violated by the instant subpoenas, respondents lack standing to assert this argument. Respondent vendors lack standing to assert the rights of their respective owners and operators.

Circuit has stated that "the burden of showing that an agency subpoena is unreasonable remains with the respondent ... and where ... the agency inquiry is authorized by law and the materials sought are relevant to the inquiry, that burden is not easily met." *SEC v. Brigadoon Scotch Distrib. Co.,* 480 F.2d 1047, 1056 (2d Cir.1973), *cert. denied,* 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974); *see also In re McVane,* 44 F.3d at 1135. Moreover, the Court must "defer to the agency's appraisal of relevancy, which 'must be accepted so long as it is not obviously wrong.'" *In re McVane,* 44 F.3d at 1135.

■ Such judicial deference is no less appropriate in the context of a review of subpoenas issued by the F.E.C. In order to enable the F.E.C. to function effectively, the Congress granted it broad investigative powers. Under 26 U.S.C. § 9039(b), the F.E.C. is authorized to conduct investigations "which it determines to be necessary to carry out its responsibilities under this chapter." As the District of Columbia Circuit has observed, "[s]ection 9039(b) is, by its own terms, a broad grant of investigative power." *Jones v. Unknown Agents of the FEC,* 613 F.2d 864, 872 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980). Moreover, Congress authorized the F.E.C. "to conduct investigations and hearings *expeditiously.*" 2 U.S.C. § 437d(a)(9) (emphasis added).

■ Respondents have failed to carry their heavy burden of demonstrating that the instant subpoenas are overbroad and seek irrelevant materials. Instead, respondents merely rehash their argument that the F.E.C.'s investigation is motivated by an improper purpose. Apart from the fact that, as discussed above, this argument is without merit, it fails entirely to address the specific issue of the instant subpoenas' scope and relevance to the underlying investigation. Thus, respondents have not sustained their

burden of showing that the instant subpoenas are unreasonable, and respondents have equally failed to show that the agency's appraisal of relevancy is "obviously wrong." Therefore, this Court must defer to the F.E.C.'s appraisal of the relevancy of the documents and information sought by the instant subpoenas.[4] *See In re McVane,* 44 F.3d at 1135. Respondents' third argument is without merit.

Accordingly, the motion is granted, and respondents are hereby ordered to comply with the instant administrative subpoenas *duces tecum.*

SO ORDERED.

---

4. Respondents also argue that the F.E.C. already possesses the information sought by the instant subpoenas insofar as the Fulani Committee has already been audited by the F.E.C. and respondents have already turned over the bulk of the relevant information to the F.E.C. Notwithstanding such claims by respondent, "[a] person or corporation being investigated cannot be placed in a position of giving only such information as he or it may choose to offer. Usually it is the information which is not offered, that forms the basis for scrutiny when illegal practices are in question." *NLRB v. United Aircraft Corp.,* 200 F.Supp. 48 (D.Conn.1961), *aff'd,* 300 F.2d 442 (2d Cir.1962).